# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KHALIL HAMMOND, *et al.*, | |
| Plaintiffs, | No. 1:25-cv-48 |
| v. | (CARLSON, M.J.) |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, *et al.*, | |
| Defendants. | |
| MALIKA HENDERSON, *et al.*, | |
| Plaintiffs, | No. 1:25-cv-49 |
| v. | (CARLSON, M.J.) |
| LAUREL HARRY, *et al.*, | |
| Defendants. | |
| ANTOINE WALKER, *et al.*, | |
| Plaintiffs, | No. 1:25-cv-50 |
| v. | (CARLSON, M.J.) |
| LAUREL HARRY, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' SUR-REPLY BRIEF IN OPPOSITION TO**
***WALKER* DEFENDANTS' MOTION TO DISMISS**

Plaintiffs file this sur-reply brief to respond to the *Walker* Defendants' reliance on *Fantone v. Latini*, 780 F.3d 184 (3d Cir. 2015) to support their argument that Plaintiffs' due-process claims should be dismissed "to the extent they rely on an alleged infringement of Plaintiffs' ability to qualify for parole." Defs.' Reply Br. 6–7, ECF No. 94. Plaintiffs have stated a liberty interest in avoiding continued placement on the Restricted Release List ("RRL") and Intensive Management Unit ("IMU") based on several factors combined, including parole ineligibility. *See* Pls.' Resp. Br. 33–35, ECF No. 90. Far from precluding this approach, *Fantone* actually supports the proposition that a court should consider the combination of all relevant factors, including parole eligibility, in analyzing whether a sufficient liberty interest exists.

In *Wilkinson v. Austin*, the Supreme Court considered whether incarcerated individuals in Ohio bringing due-process claims had a liberty interest in avoiding placement in solitary confinement at the state's highest security prison. 545 U.S. 209, 213, 223 (2005). Several factors, especially the indefinite and parole-disqualifying nature of "Supermax" placement, were enough together to clear that hurdle. *Id.* at 223–24; *see* Pls.' Resp. Br. 32–33, 34–35.

The plaintiff in *Fantone*, whose grant of parole was rescinded after misconduct proceedings, offered a *Wilkinson* "combination argument" in support of his due-process claim. 780 F.3d at 189. He contended that those proceedings'

1

consequences—placement in the Restricted Housing Unit and rescission of his parole—were sufficient to create a liberty interest. *Id.* The court rejected that conclusion, observing that the plaintiff faced "far less restrictive constraints" than were imposed in *Wilkinson*'s Supermax, his confinement was for "a set term of days," and it was regularly reviewed at intervals no less than every thirty days. *Id.* at 189–90 & 190 n.5. The Supermax placement in *Wilkinson*, in contrast, was indefinite and only reviewed annually. *Id.* at 189. The court also made two observations about Fantone's parole argument: first, that, "unlike the Supermax inmates [in *Wilkinson*], Fantone was not **disqualified** for parole consideration," *id.* at 190 (emphasis added); and, second, that the Pennsylvania Parole Board has discretion to rescind grants of parole before release, undercutting the notion that the Commonwealth has created a standalone liberty interest in being paroled, *id.* (citing *Johnson v. Commonwealth*, 532 A.2d 50, 52 (Pa. Commw. Ct. 1987)).

Through misleading modifications of quotations, Defendants attempt to transform the *Fantone* court's conclusions about the particular facts before it into blanket statements about all due-process claims brought by Pennsylvania prisoners.

First, in describing why the court rejected Fantone's *Wilkinson*-based "combination argument," Defendants quote the court as saying "that '[t]hese factors . . . do not commix [**in Pennsylvania**] analogously.'" Defs.' Reply Br. 7 (quoting *Fantone*, 780 F.3d at 189) (emphasis added). But the court actually said

2

that "[t]hese factors . . . do not commix *here* analogously." *Fantone*, 780 F.3d at 189 (emphasis added). The court was obviously making a statement about the facts before it, not all due-process claims arising from Pennsylvania prisons.

Second, Defendants partially quote *Fantone* to support their argument that consideration of parole implications has no place in the liberty-interest calculus. Defendants summarize the court as holding that "the denial of parole 'd[oes] not, either alone *or in combination,* create [an] atypical and significant hardship in retaliation [*sic*] to the ordinary incidents of prison life.'" Defs.' Reply Br. 7 (quoting *Fantone*, 780 F.3d at 191 (emphasis supplied by Defendants)). This quote is however, only the last portion of the court's holding and omits crucial language that contradicts Defendants' argument. The sentence in full is: "Fantone did not have a liberty interest that defendants could have infringed because the misconduct determinations, his time in the RHU, and the rescission of his parole did not, either alone or in combination, create atypical and significant hardship in relation to the ordinary incidents of prison life." *Fantone*, 780 F.3d at 191.

So the Third Circuit *did* consider the plaintiff's parole rescission in combination with other factors. *See also id.* at 190 ("Ultimately, we conclude that Fantone's due process argument is unavailing. The combination of his retention in the RHU and the rescission of his parole did not infringe his liberty interests."). That the precise combination in *Fantone* ultimately fell short does not mean that each

3

individual factor should be given no consideration at all. *See id.* at 191. Though discretionary parole may be insufficient on its own to afford individuals a liberty interest, the parole ramifications of Plaintiffs' RRL and IMU placements carry weight in the determination of whether the combined conditions "impose[] atypical and significant hardship on the inmate[s] in relation to the ordinary incidents of prison life." *Wilkinson*, 545 U.S. at 222–23 (citation omitted).

Neither do the facts of *Fantone* compel a decision in Defendants' favor. Plaintiffs' placement on the RRL and in the IMU impose greater hardship than that suffered by the plaintiff in *Fantone*. While Fantone was confined to the RHU for a "set term of days," *Fantone*, 780 F.3d at 190, the RRL involves indefinite solitary confinement, more akin to the Supermax in *Wilkinson*, Compl. ¶ 68, ECF No. 1; *Wilkinson*, 545 U.S. at 224. And Plaintiffs themselves have spent years, not days, in solitary. *Compare* Compl. ¶¶ 208, 235, *with Fantone*, 780 F.3d at 187. In addition to these restrictions, RRL and IMU placement prevent individuals from being eligible for parole because they are barred from completing programming that is a prerequisite for parole. *See* Compl. ¶¶ 189, 219–20, 243, 264, 269. Plaintiffs' inability to qualify for parole is properly considered among the factors giving rise to a protected liberty interest. *See Wilkinson*, 545 U.S. at 224; *Fantone*, 780 F.3d at 189 (discussing *Wilkinson*); *id.* at 191 (considering parole rescission "in combination"

4

with other factors). Defendants' contrary reading of *Fantone* is mistaken, and the facts alleged here compel a different result.

For the reasons stated here and in Plaintiffs' Response in Opposition, Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

*s/ Matthew A. Feldman*
Matthew A. Feldman (PA 326273)
PA INSTITUTIONAL LAW
PROJECT
718 Arch St., Suite 304S
Philadelphia, PA 19106
215-925-2966
mfeldman@pilp.org

Bret Grote (PA 317273)
Jaclyn Kurin (D.C. ID No. 1600719)
Dolly Prabhu (PA 328999)
ABOLITIONIST LAW CENTER
PO Box 16537
Philadelphia, PA 19122
(412) 654-9070
bretgrote@abolitionistlawcenter.org
jkurin@alcenter.org
dprabhu@alcenter.org

Will W. Sachse (PA 84097)
Noah S. Becker (PA 327752)
Stormie Mauck (PA 328048)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
215-994-2496
will.sachse@dechert.com
noah.becker@dechert.com
stormie.mauck@dechert.com

Alexandra Morgan-Kurtz (PA312631)
PA INSTITUTIONAL LAW
PROJECT
247 Fort Pitt Blvd, 4th Fl.
Pittsburgh, PA 15222
412.434.6004
amorgan-kurtz@pilp.org

DATED: November 23, 2025